# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 1, 2014 Session

## HEATHER LYNN SPIGNER v. MICHAEL DEAN SPIGNER

**Appeal from the Probate Court for Cumberland County**
**No. 2010PF1517     Larry Michael Warner, Judge**

---

### No. E2013-02696-COA-R3-CV‒FILED-DECEMBER 8, 2014

---

In this post-divorce proceeding, Wife appeals the denial of her motion to partially set aside the final decree of divorce, the denial of two civil contempt petitions, and the trial court's ruling with regard to the parties' competing motions for modification of the parties' permanent parenting plan. Because the order in the record with regard to both the contempt and parenting plan issues contain insufficient findings of fact or conclusions of law, we vacate and remand those issues to the trial court for reconsideration. We, however, affirm as to the denial of Wife's motion to partially set aside the final divorce decree.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in Part; Vacated in Part; and Remanded

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., and KENNY ARMSTRONG, J. joined.

David B. Hamilton, Knoxville, Tennessee, for the appellant, Heather Lynn Spigner.

Jonathan R. Hamby and G. Earl Patton, Crossville, Tennessee, for the appellee, Michael Dean Spigner.

### OPINION

### Background

Plaintiff/Appellant Heather Lynn Spigner ("Wife") and Defendant/Appellee Michael

Dean Spigner ("Husband") were married in 1994. The parties had two children during the marriage who were still minors during these proceedings. The parties were later divorced by final decree on April 5, 2011. The final decree incorporated a Marital Dissolution Agreement ("MDA"), which specifically addressed the division of marital property. The final decree was also accompanied by a Permanent Parenting Plan, that the trial court indicated was "submitted by the parties." Although the agreed parenting plan is not contained in the record, there is no dispute that Husband's child support obligation was calculated based on his testimony that his current income was approximately $60,000.00, due to a recent demotion of his employment.

Ten months later, on February 2, 2012, Wife filed a motion to set aside the final decree pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Wife asserted that she had recently discovered information concerning both the marital assets and Husband's income for child support purposes. According to Wife, after the divorce was final, she discovered several accounts not contemplated during the divorce negotiations. Her discovery was allegedly made due to a forwarding error by the post office. These accounts include: Merrill Lynch account, MFS Fund Account, Wyndham Restricted Stock Units, and an alleged refund from the IRS from 2010. According to Wife, these alleged assets total $60,508.00.

In her motion, Wife also alleged that Husband misrepresented his current income during a pre-divorce deposition and hearing to calculate child support. Wife asserted that she learned after the entry of the divorce decree that Husband used her name to file a joint tax return for 2010 on which he claimed $271,659.00 as income. According to Wife, at a pre-divorce deposition in the summer of 2010, Husband testified that he had not yet filed his 2010 tax return, but that he earned approximately $160,000.00 in 2010. Additionally, at a child support hearing in September 2010, Husband testified that he had recently been demoted from a Vice President position with Wyndham Worldwide to a sales associate. It is undisputed that Husband testified at the pre-divorce hearing that the average salary for a sales associate with Wyndham Worldwide was $60,0000.00 per year. Based on this anticipated income, Wife asserts that the trial court set Husband's child support obligation at total $718.00 per month.[1] In addition, Wife asserted that Husband's 2010 income tax return revealed capital gains tax on an asset worth more than $391,994.80, which asset was

_____

[1] No child support worksheet created in the underlying divorce is included in the record on appeal. The trial court's final decree refers only to a Revised Permanent Parenting Plan "submitted by the parties." Accordingly, we are unable to discern whether the child support at issue was set by the trial court or agreed to by the parties. *See Tavino v. Tavino*, No. E2013-02587-COA-R3-CV, 2014 WL 5430014, at *10 (Tenn. Ct. App. Oct. 27, 2014) (citing Tenn. Code Ann. § 36-5-101(j)) ("[T]he parties [a]re free to enter an agreement, subject to the trial court's approval, as to all aspects of child support.").

neither disclosed nor divided at the conclusion of the marriage. Wife asserted that the various inaccuracies with regard to Husband's income and assets amounted to intentional misrepresentations intended to deprive her of her marital portion of the parties' property and her true child support award. Consequently, Wife requested an award of marital property in the amount of $401,994.80, that a corrected child support order be entered requiring Husband to pay $2,249.00 per month in child support, that she be awarded other relief, and attorney's fees.

Also on February 2, 2012, Wife filed a Petition to Modify the Permanent Parenting Plan entered by the trial court on April 5, 2011. According to Wife, the plan in place allowed each party fifty percent of the time with the children; however, Wife alleged that Husband had denied her time with the children and that Husband and his new wife had harassed her. In addition, Wife alleged that Husband enrolled the children in a private unaccredited school that has only one teacher. Wife attached a proposed permanent parenting plan to her petition, in which she sought to be named the children's primary residential parent and asked to be awarded significantly more time with the children. Based on this new parenting schedule, Wife asserted that she should be awarded $2,335.00 per month in child support.

Finally, also on February 2, 2012, Wife filed a Petition for Civil Contempt against Husband. The petition alleged that Husband had willfully failed to divide certain assets that were ordered divided pursuant to the final divorce decree and asked that Husband be incarcerated "until such time as he causes the division of all accounts in his control which the Court has ordered divided between the parties."

On March 19, 2012, Husband answered Wife's Rule 60.02 motion and her Petition for Contempt, denying the material allegations contained therein. Specifically, Husband denied that there was any asset owned by the parties that was worth more than $391,994.80. Further, Husband raised the affirmative defense of unclean hands in that Wife refused to participate in the division of some marital assets or otherwise frustrated their division. Also on March 19, 2012, Husband filed an answer to Wife's petition to modify the permanent parenting plan, denying that he had interfered with Wife's visitation or recently enrolled the children in an unsuitable school. Instead, Husband filed a counter-petition to modify the parenting plan, alleging that a material change in circumstances existed because Wife was "exercising her parenting time with her children in a hotel room." Further, Husband alleged that the children had always been enrolled in private school. Thus, Husband asked that he be named primary residential parent, that he be awarded substantially more time with the children, and that Wife be ordered to pay child support.

On December 21, 2012, the parties entered into an agreed order equally dividing one of the marital assets in contention—a Merrill Lynch 401K account totaling approximately

$360,000.00. On February 11, 2013, Wife filed a second Petition for Civil Contempt, alleging that Husband willfully failed to respond to discovery, despite a trial court order requiring Husband to respond by February 4, 2013.

On February 19, 2013, Husband filed a motion seeking a temporary modification of the parenting plan. In his motion, Husband alleged that Wife was verbally abusing the parties' daughter, abusing alcohol, and residing in a hotel during her visitation with the children.[2] In addition, Husband alleged that the parties' daughter expressed a desire to reside with Husband. A hearing on Husband's petition for a temporary order was scheduled for March 19, 2012. On March 25, 2012, the trial court entered an order on Husband's motion for temporary modification of the parenting plan. The trial court found that a material change in circumstances occurred, and that it was no longer in the children's best interest to spend alternating weeks with Wife. Specifically, the trial court found that: "[I]t is not in the children's best interests to continue residing in hotel during alternative weeks that [Wife] has the children, and that changing schools would not be in their best interests at this time." Husband was, therefore, named the children's primary residential parent, and Wife was awarded standard visitation. No amended child support worksheet or permanent parenting plan was attached to the trial court's order.

The trial court heard the outstanding Rule 60.02 motion, contempt petitions, and competing petitions for modification of the parenting plan on June 17 and August 16, 2013. Both parties testified regarding the allegedly concealed accounts and income. Husband admitted that he declined to provide his 2010 income tax return during a pre-divorce deposition, as he had not filed his taxes until shortly after the entry of the final decree. Husband also admitted that he testified at the pre-divorce deposition that his income was expected to be $60,000.00 as a sales associate, much less than his prior income. However, Husband testified that the sales associate income was due to a demotion and that it was what he reasonably anticipated to earn in the new position. Further, Husband testified that he no longer worked for the same company, and had recently sought other employment. Finally, Husband denied that any assets or income were concealed from Wife during the marriage or divorce, as Wife was the party who typically dealt with all of the couple's financial matters. Indeed, Wife admitted at the hearing that she received and opened all of the couple's mail during the marriage and was the party typically tasked with financial matters during the marriage. Further, Wife admitted that she had some concerns prior to signing the MDA regarding the property included and Husband's income, but that she signed the MDA regardless.

---

[2] According to Husband, Wife remarried and moved to Knoxville following the divorce. In order to exercise her parenting time with the children, Wife rents a hotel room in Cumberland County for the duration of her every-other-week visitation with the children.

Both parties testified regarding their view of what parenting arrangement was in the children's best interest. When Wife attempted to have the couple's twelve-year old daughter testify as to her parenting preference, however, Husband objected on the basis that the parenting issues had been previously decided by the trial court's March 25, 2012 order. Wife responded that the March 25, 2012 order was merely a temporary order pending final hearing. Regardless, the child was ultimately not allowed to testify.[3]

The trial court entered a written ruling on September 11, 2013. With regard to the parenting plan issue, the trial court ruled that "the children's best interests will continue to be served by the [parenting schedule adopted by the trial court on Husband's motion for a temporary order]." Husband was ordered to provide his 2012 tax return information within thirty days of the court's order so that support could be calculated. The trial court ruled that Wife would be imputed minimum wage.[4]

The trial court also denied Wife's contempt petitions, stating:

> The Court does not find [Husband] in contempt on either of the outstanding Petitions for Contempt, but does Order the parties to divide all remaining personal property which is listed in the [MDA] and which has not yet been divided, within 30 days of the entry of this Order. While not rising to the level of contempt, the Court finds that [Husband] did wrongfully liquidate marital property following the entry of the Final Decree in this matter and Orders [Husband] therefore, to pay [Wife] her share of such property in the amount of Sixteen Thousand and 00/100 Dollars ($16,000.00) within six (6) months of the entry of this Order, in addition to the remaining undivided accounts listed in the [MDA].

Finally, the trial court denied Wife's request for relief from the final judgment, stating: "The Court further does not find fraud or any other sufficient grounds for setting aside the Final Decree of Divorce in this cause, pursuant to Rule 60, and does therefore deny that Motion."

On October 10, 2013, Wife filed a motion to alter or amend the trial court's judgment

---

[3] Wife does not raise the exclusion of the testimony of the child as an issue in her Statement of the Issues.

[4] Wife does not appear to take issue with this ruling. Wife's later testimony reveals that she works as a stay-at-home mother and does not earn outside income.

pursuant to Rules 59.01 and 59.04 of the Tennessee Rules of Civil Procedure. Essentially, Wife argued that the trial court erred in all respects in its order on September 11, 2013, and that such judgment should be vacated and judgment entered in Wife's favor. To support her argument, Wife pointed to the lack of any findings of fact or conclusions of law to support the trial court's rulings.

On November 18, 2013, Wife filed a notice in the trial court that no child support order had been entered in the matter, despite the trial court's September 11, 2013 order requiring Husband to submit his tax return in order to calculate child support. The trial court held a hearing on Wife's Rule 59 motion on November 13, 2013. A written order was entered denying Wife's motion on November 25, 2013. The order also set Husband's child support obligation at $167.00 per month, based on an income of over $130,000.00 per year. Wife subsequently appealed.

## Issues Presented

Wife raises several issues on appeal, which are taken from her brief:

1. Whether the trial court erred in denying recovery related to undivided assets divesting Wife of discovered and unaddressed assets.
2. Whether the trial court erred in dismissing a Rule 60 motion to reconsider the child support issue when Husband allegedly misrepresented his income.
3. Whether the trial court erred in dismissing Wife's contempt claim where Husband allegedly interfered with the distribution of $59,309.17 in assets previously ordered to be Wife's property.
4. Whether the trial court erred in not setting forth facts and conclusions of law in the best interest analysis for the permanent parenting plan.
5. Whether Wife is entitled to attorney's fees on appeal.

## Analysis

### Rule 60.02 Motion

We begin first with Wife's contention that the trial court erred in denying her relief pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

In two recent opinions, *Henderson v. SAIA*, Inc., 318 S.W.3d 328 (Tenn. 2010), and *Furlough v. Spherion Atlantic Workforce, LLC*, 397 S.W.3d 114 (Tenn. 2013), the Supreme Court discussed the standards applicable to a Rule 60.02 motion challenging a trial court's final judgment. In *Henderson*, the Court reiterated the appropriate standard of review, stating as follows:

> Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). The standard of review on appeal is whether the trial court abused its discretion in granting or denying relief. This deferential standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," and thus "envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).
>
> A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case "on a clearly erroneous assessment of the evidence." *Id.* The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Indeed, when reviewing a discretionary decision by the trial court, the

"appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999); *see also* ***Keisling v. Keisling***, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

318 S.W.3d at 335.

In ***Furlough***, the Tennessee Supreme Court provided the following additional guidance:

> [W]e have characterized relief under Rule 60.02 as an "exceptional remedy," Nails v. Aetna Ins. Co., 834 S.W.2d 289, 294 (Tenn.1992), "designed to strike a proper balance between the competing principles of finality and justice," ***Jerkins v. McKinney***, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," ***Thompson v. Firemen's Fund Ins. Co.***, 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." Toney v. Mueller Co., 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." ***Killion v. Tenn. Dep't of Human Servs.***, 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." ***Henderson***, 318 S.W.3d at 336.
>
> A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence. ***McCracken v. Brentwood United Methodist Church***, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***Hodges v.. S.C. Toof & Co.***, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" ***Goff v. Elmo Greer & Sons Constr. Co.***, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting ***Teter v. Republic Parking Sys., Inc.***, 181 S.W.3d 330, 341 (Tenn. 2005)). In general, "the bar for attaining relief is set very high and the burden borne by the movant is heavy."

***Johnson v. Johnson***, 37 S .W.3d 892, 895 n. 2 (Tenn. 2001).

397 S.W.3d at 127–28 (brackets in original).

In her motion in the trial court, Wife relied on Rule 60.02(2)—"fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party"—to support her request for relief. This Court has previously considered the quanta of proof required to show fraud, misrepresentation, or other conduct sufficient to warrant relief pursuant to Rule 60.02(2):

> [P]ost-judgment relief is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to
>
>> an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.
>
> ***Leeson v. Chernau***, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987). Both withholding evidence and the knowing use of perjured testimony can provide grounds for granting post-judgment relief pursuant to Tenn.R.Civ.P. 60.02(2). ***Anderson v. Cryovac, Inc.***, 862 F.2d at 923 (withholding evidence); ***Harre v. A.H. Robins Co.***, 750 F.2d 1501, 1503 (11th Cir. 1985) (perjured testimony); ***Rozier v. Ford Motor Co.***, 573 F.2d 1332, 1339 (5th Cir. 1978) (withholding evidence); ***Pina v. McGill Dev. Corp.***, 388 Mass. 159, 445 N.E.2d 1059, 1063–64 (1983) (perjured testimony); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2861 (1973).

***Duncan v. Duncan***, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990). Accordingly, a movant may obtain relief pursuant to Rule 60.02(2) when she can prove with clear and convincing evidence that the opposing party withheld evidence or submitted perjured testimony.

Wife argues that Husband in this case both withheld evidence regarding certain marital assets and submitted perjured testimony regarding the value of the assets and his income. In contrast, Husband asserts that he neither concealed assets, nor misrepresented his

income in his deposition as he merely relayed the facts as they existed at the time.

The trial court, while denying Wife's motion, gave no explanation for its decision. From our research, Rule 60.02 places no affirmative duty on the trial court to make findings of fact or conclusions of law in disposing of a Rule 60.02 motion. However, this Court has previously indicated that we are "unable to adequately review" a trial court's discretionary decision and provide the appropriate amount of deference to that decision, when the trial court fails to make appropriate findings of fact and conclusions of law. *Rogin v. Rogin*, No. W2012-01983-COA-R3-CV, 2013 WL 3486955, at *7 (Tenn. Ct. App. 2013) (citing *Spicer v. State*, 12 S.W.3d 438, 445 (Tenn. 2000)). Accordingly, while we will go on to consider whether Wife met her burden in this case, we note that the better method of disposing of a Rule 60.02 motion is to include appropriate findings of fact and conclusions of law so that the decision may be given the appropriate deference.

From our review of the evidence presented at the hearing on the Rule 60.02 motion, we conclude that Wife failed to meet her burden to prove, by clear and convincing evidence, that she was harmed by "an intentional contrivance . . . to keep complainant and the Court in ignorance of the real facts touching the matters in litigation." *Duncan*, 789 S.W.2d 563 (quoting *Leeson*, 734 S.W.2d at 638). Wife's only argument in her appellate brief addressing whether she met her burden with regard to the allegedly concealed assets, states:

> In this matter the clear thrust of the testimony of [Husband] testified [sic] as to how the found accounts were actually parts of the same accounts, or had no value, were intentionally false or designed to deceive [Wife]. . . . Only his conduct in actually cashing an account which he represented to be actually part of another account and of no value highlighted to the Court the falsity of the representations.

With regard to Husband's income, Wife asserts that Husband refused to respond to questions regarding his 2010 tax return and income and misrepresented his income. On this basis, Wife asserts that Husband engaged in fraud or misrepresentation justifying relief from the final judgment.

Respectfully, we disagree. First, we note that the record on appeal does not contain any transcripts or Statements of Evidence from any pre-divorce hearing or deposition concerning marital property or Husband's income. Instead, our record only includes hearings after the final decree was entered and we only have the parties' competing interpretations of the pre-divorce proceedings to consider in this case. Consequently, much of the trial court's decision rests on its assessment of the credibility of the parties. When the resolution of the

-10-

issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. *In re Arteria H.*, 326 S.W.3d 167, 176 (Tenn. Ct. App. 2010) (citing *McCaleb v. Saturn Corp*., 910 S.W.2d 412, 415 (Tenn. 1995)). Accordingly, we typically do not disturb the trial court's ruling without clear and convincing evidence to the contrary. *Franklin County Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

In the hearing on Wife's Rule 60.02 motion, Husband testified that none of the accounts Wife asserts were concealed actually existed in a separate form at the time of the divorce, but that they were included in accounts properly divided in the MDA. In her appellate brief, Wife contends that Husband's testimony was false, pointing to Husband's admission that he could be entitled to a tax refund due to an overpayment for income received during the marriage, as well as Husband's admission that he "cashed . . . in" one account for approximately $15,000.00 in order to pay his living expenses while the divorce was pending. From our review of the record, the evidence is somewhat conflicting with regard to whether any additional accounts or money actually existed at the time the MDA was signed. *See Marciante v. Perry*, M2006-02654-COA-R3-CV, 2008 WL 820502, at *7 (Tenn. Ct. App. March 26, 2008) (quoting *Gratton v. Gratton*, No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *8 (Tenn. Ct. App. Mar. 28, 2006) ("The trial court is only authorized to divide marital property that actually exists at the time of divorce, and it cannot create assets that do not exist."). Essentially, Husband asserts that no additional accounts continued to exist that were not considered in the MDA, while Wife insists that several accounts were concealed and, therefore, not equitably divided in the divorce. The trial court denied Wife's request for relief, thereby implicitly crediting Husband's explanation. As an appellate court, "we are not in a position to disregard the trial court's implicit determination of the witness' credibility" in Husband's favor. *See Webb v. Douglas*, No. W2014-00299-COA-R3-CV, 2014 WL (Tenn. Ct. App. 2014).

Husband further asserts that Wife was well-aware of both the allegedly concealed accounts and his income prior to the divorce. Generally, the party asserting intentional misrepresentation[5] is required to prove that he or she justifiably relied on the misrepresentation of the opposing party. In order to prevail on a claim for intentional misrepresentation, a plaintiff must show:

---

[5] Recently our Tennessee Supreme Court clarified that "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are different names for the same cause of action. *See Hodge v. Craig*, 382S.W.3d 325, 342 (Tenn. 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)). The Court, therefore, suggested that this tort be referred to as "intentional misrepresentation" henceforth.

(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) **that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation;** and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (emphasis added) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). This Court has previously applied the justifiable reliance standard in the situation where a party is seeking relief from a final judgment based upon an intentional misrepresentation. *See Brown v. Raines*, 611 S.W.2d 594, 597 (Tenn. Ct. App. 1980) (noting that party asserting intentional misrepresentation in order to be relieved from a final judgment must show "justifiable reliance on the misrepresentation[]").

Here, the undisputed testimony at the hearing on the Rule 60.02 motion shows that Wife was well-aware of the parties' financial situation during the marriage and was the party who filed the parties' taxes throughout the marriage.[6] Indeed, Wife admitted that she received and opened all mail during the marriage and took care of all of the couple's financial matters. Moreover, Wife testified that prior to signing the MDA in this case, she had serious misgivings about the MDA's provisions, but that she signed the MDA due to duress from her own attorneys; nothing in the record indicates that Husband pressured Wife to sign the MDA. Under these circumstances, the evidence indicates that were there errors in the MDA with regard to the marital assets and Husband's income, Wife knew or should have known of those errors prior to the entry of the final decree. Accordingly, even if we were to agree with Wife that the final decree was not an accurate representation of the parties' marital assets or Husband's income, we cannot conclude that Wife has shown, by clear and convincing proof that she "did not know that the representation was false when made and was justified in relying on the truth of the representation." *Hodge*, 382 S.W.3d at 343.

Furthermore, although Wife appears to have known that Husband had previously earned significantly more income prior to being demoted, the trial court determined in the divorce proceedings that it was appropriate to base Husband's child support obligation on

---

[6]Nothing in the record indicates that Husband began earning significantly more income or obtaining more assets after the parties' separation.

his anticipated future income, rather than his income from 2010. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i) (providing that "[i]mputing additional gross income to a parent is appropriate . . . [i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed"). Wife does not appear to have appealed that finding; indeed, due to the inadequacy of the record on appeal, we are unable to determine from the record on appeal if Wife made an appropriate request for income to be imputed to Husband in the underlying divorce proceedings. Instead, the only evidence in the record is Husband's undisputed testimony at the hearing on the Rule 60.02 motion, wherein he testified that he obtained the $60,000.00 figure as an average of sales associate salaries for Wyndham, and that he did not testify that he was guaranteed to earn only $60,000.00, due to the fluctuating income of a job that is paid through commission. Thus, nothing in the record indicates that Husband intentionally misled Wife as to his anticipated income. Because Husband's income was calculated based on his anticipated salary rather than his prior income, and Wife did not appeal that ruling in the underlying divorce proceeding, she cannot show that a "positive wrong" was done to her right to receive child support by the mere fact that Husband was incorrect in his approximation of his 2010 income. *See Duncan*, 789 S.W.2d 563 (quoting *Leeson*, 734 S.W.2d at 638).

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Wife's Rule 60.02 motion. Although we have concluded that the trial court did not abuse its discretion in this case, we again emphasize that the better practice is to include relevant findings of fact and conclusions of law in an order disposing of Rule 60.02 motion.

## Lack of Findings on Remaining Issues

While findings of fact and conclusions of law may not be strictly required to dispose of a party's Rule 60.02 motion, the same cannot be said with regard to either a civil contempt petition[7] or a petition to modify a parenting plan. Tennessee Rule of Civil Procedure 52.01 provides:

> In all actions tried upon the facts without a jury, the court shall
> find the facts specially and shall state separately its conclusions

---

[7] There was some confusion at oral argument as to whether the contempt petitions filed by Wife constituted civil contempt or criminal contempt. From our review of the record, both petitions ask for Husband to be incarcerated until he complies with the trial court's orders. Clearly, then, both petitions alleged civil contempt. *See Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996) ("Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. . . . If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison.") (internal citation omitted).

of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.* This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). Indeed, the Tennessee Supreme Court recently indicated that Rule 52.01 findings and conclusions serve three purposes:

> First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See Estate of Bucy v. McElroy*, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004) (same); 9C [Charles A. Wright *et al.*,] *Federal Practice and Procedure* § 2571, at 219 [(3d ed. 2005)] [hereinafter 9C Federal Practice and Procedure] (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C *Federal Practice and*

-14-

*Procedure* § 2571, at 221–22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. *Hardin*, 2012 WL 6727533, at *5.

*Lovlace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at * 19 (Tenn. Ct. App. Apr. 21, 2004)).

## Modification of Parenting Plan

We begin first with the trial court's order regarding the modification of the parenting plan. Here, the trial court entered two orders regarding modifying the parenting plan. First, the trial court entered an order on Husband's motion for a temporary order pending a final hearing. The trial court's order states:

> Upon such testimony, arguments of counsel and the record as a whole, the Court finds that a material change in circumstances has occurred since the entry of the parties' Final Decree of divorce that affects the children's best interests, and that such change requires **temporary** modification of the parties' permanent parenting plan. The Court specifically finds that it is not in the children's best interests to continue residing in a hotel during the alternative weeks that [Wife] has the children, and that changing schools would not be in their best interests at this time.
>
> In light of all the proof presented, the Court finds that the children's interest will be served by designating [Husband] as the **temporary** primary residential parent, with [Wife] having parenting time consistent with the Court's Standing Order of Visitation . . . .

(Emphasis added). Thus, the trial court's order above clearly indicates that it is temporary.[8]

---

[8] Although not raised by either party, we note that Tennessee Code Annotated Section 36-6-405(b) provides: "In a proceeding for a modification of a permanent parenting plan, the existing residential schedule shall not be modified prior to a final hearing unless the parents agree to the modification or the

-15-

The trial court's later final order on the parties' competing modification petitions states:

> Upon the testimony of the parties, arguments of Counsel and the record as a whole, the Court finds as follows:
>
> The Court previously found in March of this year, that a material change in circumstances had occurred which affected the best interests of the parties' two minor children, and named [Husband], temporarily, as the children's primary residential parent, with [Wife] having visitation pursuant to the Court's Standing Order of Visitation.
> On Final Hearing, in light of all the evidence presented, the Court finds that the children's best interests will continue to be served by that Parenting Plan with the following exceptions [outlined below]: . . . .

This Court has previously held that a trial court must comply with Rule 52.01 with regard to a hearing on a petition to modify a parenting plan. *See Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *13 (Tenn. Ct. App. Nov. 19, 2013) (concluding that without findings of fact and conclusions of law as to the factors the trial court considered, this Court is unable to conduct a meaningful appellate review of decision regarding a decision to modify a parenting schedule). However, neither of the trial court's orders complies with Rule 52.01. In order to modify a parenting plan, the moving party must show: (1) a material change in circumstances affecting the child's best interests; and (2) that modification is in the child's best interests pursuant to the factors outlined in Tennessee Code Annotated Section 36-6-106(a). Tenn. Code Ann. § 101(c) ("If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest."); *see also* Tenn. Code Ann. § 36-6-405(a) (providing that the procedure for modification of parenting plan shall be governed by "the process established by § 36-6-404(b)"); *c.f.* Tenn. Code Ann. § 36-6-404(b) (directing the trial court to consider the factors outlined in Tenn. Code Ann. § 36-6-106(a) to determine a child's residential schedule). While the trial court's orders do indicate that the trial court found a material change in circumstances, neither order indicates what circumstance actually changed in this case. Moreover, the trial court's order contains no indication that the trial court considered any of the fifteen factors outlined in Tennessee Code Annotated Section 36-

---

court finds that the child will be subject to a likelihood of substantial harm absent the temporary modification." Nothing in the trial court's order on Husband's request for a temporary order of modification indicates that the trial court found that the children were likely to suffer substantial harm.

6-106(a) that "shall" be considered by the trial court in determining the best interests of the children. This Court has previously held that the failure to articulate any factors considered in a decision to change a parenting plan requires this Court to vacate the decision and remand for the entry of an order that "specifically address[es] the best interest of the child and should articulate the factors relied on by the trial court in reaching its decision." *See Iman*, 2013 WL 7343928, at *13.

## Civil Contempt

Findings of fact and conclusions of law are also required in the context of a civil contempt petition. *See **Lovlace v. Copley***, 418 S.W.3d 1 (Tenn. 2013). Recently, the Tennessee Supreme Court explained:

> Civil contempt claims based upon alleged willful disobedience of a court order have four essential elements: (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful." ***Konvalinka*** [***v. Chattanooga–Hamilton Cnty. Hosp. Auth.***], 249 S.W.3d [346,] 354–55 [(Tenn. 2008)].Whether a party violated an order and whether a violation was willful are factual issues, which appellate courts review de novo, with a presumption of correctness afforded the trial court's findings. ***Id.*** at 356–57.

***Lovlace***, 418 S.W.3d at 34 (footnote omitted). In ***Lovlace***, the mother and step-father of a child were held in civil contempt based on their interference with the visitation of grandparents. On appeal to the Tennessee Supreme Court, however, mother and step-father argued that the trial court's contempt order did not contain sufficient findings of fact on the disputed issue. ***Id.*** at 34–35. The Tennessee Supreme Court agreed that the trial court failed to comply with Rule 52.01 in that it failed to "include sufficiently specific findings on the disputed facts that were crucial to determining the elements of civil contempt." ***Id.*** at 35. The Court explained that "[t]here is no bright-line test by which to assess the sufficiency of factual findings, but 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Id.*** (quoting 9C Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2571, at 328 (3d ed. 2005)). Thus, a trial court must make appropriate findings of fact and conclusions of law with regard to a civil contempt petition.

Here, Wife filed two contempt petitions: 1) regarding Husband's alleged failure to timely divide the marital assets equitably divided in the parties' MDA; and 2) regarding Husband's failure to comply with discovery in the post-divorce proceedings. The trial court's order on Wife's two outstanding contempt petitions has no findings of fact or conclusions of law that could be used "to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion." *Lovlace*, 418 S.W.3d at 35. Instead, the trial court's order merely states that "[t]he Court does not find [Husband] in contempt on either of the outstanding Petitions for Contempt, but does order the parties to divide all remaining personal property which is listed in the [MDA and which has not yet been divided, within 30 days of the entry of this Order." Thus, it appears that the trial court agreed with Wife that some accounts governed by the MDA had not been divided; what is not apparent is the trial court's reasoning for not finding Husband in civil contempt. The trial court's oral ruling also provides no illumination, as the trial court merely states that it is denying Wife's motions for "housekeeping purposes." Respectfully, the trial court's ruling fails to comply with either the letter or the spirit of Rule 52.01.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at * 10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013). The issues in this case concern sharply contested disputes regarding Husband's alleged failure to divide the marital assets, Husband's alleged failure to comply with discovery, and issues related to the welfare of the parties' two children. The trial court, having presided over the divorce, is in the best position to decide these issues, especially given the fact that this Court has not been provided with transcripts or documents relating to many of the issues involved in the underlying divorce. Under these circumstances, we

conclude that the best remedy is to vacate the judgment of the trial court with regard to both the contempt petitions and the competing motions to modify the parenting plan, and remand for the entry of orders fully compliant with Rule 52.01. Nothing in this Opinion should be construed as preventing the parties from putting on additional evidence regarding the child custody issue, as "the trial court should endeavor to ascertain and give effect to the parties' actual circumstances, which will necessarily change over the course of time, e.g., people remarry, have more children, insurance premiums rise and fall, and child care needs change." *In re C.W.*, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013).

## Attorney's Fees

Finally, Wife requests an award of her attorney's fees on appeal. Pursuant to Tennessee Code Annotated 36-5-103(c), a party may recover reasonable attorney's fees incurred in enforcing a child support order or related to the adjudication of a change of custody:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). In addition, the parties' MDA specifically provides for attorney's fees resulting from a breach of the MDA. In this case, Wife contends that she should be awarded attorney's fees incurred in this appeal[9] pursuant to both Tennessee Code Annotated 36-5-103(c) and the agreed MDA.

As this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful

---

[9]Although Wife sought attorney's fees incurred in the trial court, she does not appear to appeal the trial court's implicit denial of her request by the trial court. Instead, she only seeks an award of her fees incurred in prosecuting the appeal.

of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at * 13 (Tenn. Ct. App. Sept. 18, 2007) (quoting ***Dulin v. Dulin***, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)).

In this case, Wife was required to file an appeal to this Court to correct the trial court's failure to make any findings of fact or conclusions of law with regard to both the child custody issue and the enforcement of the agreed MDA through the court's contempt power. As previously discussed, the order disposing of these issues failed to either strictly or substantially comply with Rule 52.01. Additionally, while we were able to dispose of Wife's Rule 60.02 motion based upon the record, we note that the trial court also failed to make any findings to support its ruling on this issue. Indeed, Wife's attorney described the proceedings in the trial court as "cowboy land" at oral argument on this cause, due to the lack of formality and findings in the trial court's orders. Moreover, the record on appeal reveals that Husband is in a far better financial situation to bear these expenses. Under these circumstances, we exercise our discretion to award Wife attorney's fees incurred on appeal in obtaining a vacutur of both the child custody issue, pursuant to Tennessee Code Annotated 36-5-103(c), and the contempt issues, pursuant to the parties' MDA. Because Wife did not prevail on her appeal of the denial of her Rule 60.02 motion, Wife is not entitled to attorney's fees incurred in connection with that motion. Accordingly, we remand this case to the trial court for a determination of Wife's reasonable attorney's fees incurred on appeal in connection with the custody and contempt issues.

## Conclusion

The judgment of the Probate Court of Cumberland County is affirmed in part and vacated in part. This cause is remanded to the trial court for further proceedings in accordance with this Opinion, as well for a determination of Wife's reasonable attorney's fees incurred in prosecuting this appeal with regard to the child custody and contempt issues. Costs of this appeal are taxed one-half to Appellant Heather Lynn Spigner, and her surety, and one-half to Appellee Michael Dean Spigner, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE